UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
    Robyn Louise McCormick,
    Debtor.                                     No. 7-03-17898 MA

Cheri Morrison,
    Plaintiff,

v.                                               Adv. No. 05-1078 M

Robyn Louise McCormick,
    Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Complaint for Exception to Discharge Under 11 U.S.C. Section 523[1] and for Denial of Discharge Under 11 U.S.C. Section 727 (the "Complaint"). A trial was held on July 26, 2006 and the Court makes the following findings of

---

[1] The cause of action under 11 U.S.C. § 523 concerns a transaction between Plaintiff Cheri Morrison ("Plaintiff") and Debtor Robyn McCormick ("Defendant") in 1985 whereby Plaintiff loaned Defendant $14,000.00 and took a second mortgage on certain of the Defendant's real property as security for the loan. Defendant defaulted on the loan and Plaintiff foreclosed on the mortgage and obtained a default judgment on the loan in the amount of $31,139.40 plus interest at the rate of $12.625% per annum from the date of the judgment until paid. The value of the property was insufficient to satisfy the indebtedness to Plaintiff. Plaintiff alleges that Defendant misrepresented the value of the property at the time of the transaction such that the debt should be declared non-dischargeble pursuant to 11 U.S.C. § 523(a)(2)(A) as a "debt for money . . . obtained by false pretenses, a false representation or actual fraud." Plaintiff also alleges that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) as a "debt for willful and malicious injury."

Because the Court finds that there is sufficient evidence upon which to deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3), the Court need not make a determination as to whether the debt to Plaintiff is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) or (6), nor are findings necessary with regard to the other counts of the Complaint for denial of discharge.

1

fact and conclusions of law in accordance with Rule 7052, Fed.R.Bankr.P.

FINDINGS OF FACT

Defendant filed a Chapter 7 bankruptcy proceeding on October 28, 2004. In 2003 and 2004, Defendant was employed as a teacher by the Albuquerque Public School system. On her Schedule I, Defendant reported a monthly net income of $2,104.64 consisting of monthly take home pay from APS of $1,804.64 plus an estimated $300.00 per month from substitute teaching and summer school teaching. According to her payment advice for the period from October 8-15, 2004, just before filing bankruptcy, Defendant received $891.74 for this pay period as regular income and $58.84 in additional income from APS. Def. Ex. M.

At the trial of this matter, Plaintiff presented copies of Defendant's 2004 bank statements, which showed that during the 12 months prior to the filing of this bankruptcy Defendant made several deposits into two bank accounts, one with Bank of America and one with New Mexico Educators Federal Credit Union ("NMEFCU") amounting to more than $8,000.00. *See* Plaintiff's Exs. 13-15.[2] These deposits were in addition to the salary from APS, which was directly deposited and identified as such in the NMFCU account. The unidentified deposits in the Bank of America account include the following:

> Jan. 9, 2004 deposit of **$190.45**
> April 30, 2004 deposit of **$1,660.00**
> April 30, 2004 deposit of **$178.00**
> May 17, 2004 deposit of **$899.00**
> May 24, 2004 deposit of **$55.00**
> June 9, 2004 deposit of **$500.00**
> July 1, 2004 deposit of **$745.00**
> July 23, 2004 deposit of **$565.19**
> Aug. 9, 2004 deposit of **$1,035.00**
> Sept. 7, 2004 deposit of **$1,270.00**

[2]

>Oct. 15, 2004 deposit of **$1,000.00**
>Jan. 31, 2005 deposit of **$1,320.00**
>Total deposits          **$ 9,417.64**

The unidentified deposits in the NMFCU account include the following:

>Feb 4, 2004 deposit of **$50.00**
>Feb. 16 deposit of **$777.50**
>Mar. 2, 2004 deposit of **$185.00**
>May 17, 2004 deposit of **$944.94**
>Total Deposits          **$1,957.44**

The total amount of unidentified deposits in both accounts is $11,375.08.

Defendant testified that she did not recollect where these funds came from and that she did not have records or documentation concerning the source of this money. Defendant testified further that some of the money deposited into the Bank of America account was given to her by her mother, and that she kept a list of the gifts, but that she shredded the list. Defendant's Statement of Financial Affairs reflects that she received $3,100.00 in gifts from her mother in 2004. Defendant testified that she does not have deposit receipts for these gifts.

## DISCUSSION AND CONCLUSIONS OF LAW

Plaintiff claims that Defendant purposefully under-reported her income in her statements and schedules in order to qualify for a Chapter 7 bankruptcy proceeding. Plaintiff also asserts that Defendant should be denied her bankruptcy discharge because she failed to maintain adequate records or destroyed such records, which made it impossible to ascertain her financial condition.

Section 727(a)(3) provides in relevant part:

>(a) The court shall grant the debtor a discharge, unless–
>
>>(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents,

3

records, and papers, from which the debtor's financial condition or
business transactions might be ascertained, unless such act or failure to act
was justified under all of the circumstances of the case[.]

"The purpose of this provision [§ 727(a)(3)] is 'to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge.'" *In re Devaul,* 318 B.R. 824, 829 (Bankr.N.D.Ohio 2004) (quoting *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3rd Cir. 1992) (remaining citations omitted). *See also, In re Sigust,* 255 B.R. 822, 827 (Bankr.W.D.La. 2000), *aff'd,* 281 F.3d 1280 (5th Cir. 2001) ("Section 727(a)(3) is intended "to give the trustee, creditors, and the court complete and accurate information concerning the status of the debtor's affairs and financial history, and to test the completeness of the disclosure requirements to a discharge.'") (quoting *In re Pulos,* 168 B.R. 682 (Bankr.D.Minn. 1994)). Moreover, "[s]ection 727(a)(3) requires as a precondition to discharge that debtors produce records which provide creditors 'with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" *Matter of Juzwiak,* 89 F.3d 424, 427 (7th Cir. 1996)(quoting *Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 995 (Bankr.N.D.Ill. 1992)(remaining citations omitted)). While, generally, consumer debtors have a less stringent obligation to maintain books and records[3], "[t]he completeness and accuracy of a debtor's records are to be determined on a case-by-case

---

[3]*See In re Self,* 325 B.R. 224, 240 (Bankr.N.D.Ill. 2005) (noting that § 727(a)(3) "was not meant to bar the discharge of the ordinary consumer debtor") (citing *In re Scott,* 172 F.3d 959, 970 (7th Cir. 1999). *See also,* 6 Collier on Bankruptcy ¶ 727.03[3][b] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2006) (stating that "in general, consumer debtors have no obligation to keep books.") (citing *American Commercial Capital Corp. v. Pisano (In re Pisano),* 105 B.R. 125 (Bankr.S.D.Fla. 1989) (remaining citations omitted)).

4

basis, considering the size and complexity of the debtor's financial situation." *Self,* 325 B.R. at 241 (citation omitted). *See also, In re Green,* 268 B.R. 628, 647 (Bankr.M.D.Fla. 2001) ("A less stringent standard may be applied to a debtor who is not engaged in business than to a debtor who is engaged in business, nevertheless, each case must be determined on its own facts.") (citations omitted).

The creditor seeking to deny a debtor's discharge under 11 U.S.C. § 727(a)(3) bears the initial burden of proving, by a preponderance of evidence, that the debtor failed to keep adequate records. *Self,* 325 B.R. at 241 (citing *In re Costello,* 299 B.R. 882, 897 (Bankr.N.D.Ill. 2003); *Devaul,* 318 B.R. at 829 (noting that the plaintiff bears the initial burden of proving that the debtor lacks records within the meaning of § 727(a)(3))(citation omitted); *Green,* 268 B.R. at 647 (noting that under § 727(a)(3), the plaintiff "has the initial burden to show reasonable grounds that the Debtors' books or records are inadequate.")(citations omitted). "Intent is not an element of proof under § 727(a)(3)." *Self,* 325 B.R. at 241 (citing *Union Planters Bank, N.A. v. Connors,* 283 F.3d 896, 901 (7th Cir. 2002) (remaining citations omitted)). *See also In re Nemes,* 323 B.R. 316, 325 (Bankr.E.D.N.Y. 2005) ("It is not necessary to show that the Debtor willfully concealed or destroyed his records, as intent is not a necessary element of an objection to discharge under Section 727(a)(3).")(citation omitted). Once the plaintiff meets this initial burden, "the burden of proof shifts to the debtor to justify the lack of records." *Devaul,* 318 B.R. at 829 (citation omitted). *See also, Sigust,* 255 B.R. at 827 ("Once the plaintiff has established the inadequacy of the debtor's records, the burden shifts to the debtor to prove that the failure to keep same is justified under the circumstances.").

Plaintiff met her initial burden under 11 U.S.C. § 727(a)(3) by identifying from

5

Defendant's bank account statements several deposits for which the source was not readily ascertainable from the bank account statements, and which deposits were not included in Defendant's reported monthly income on her Schedule J. It then became Defendant's obligation to provide sufficient documentation of the source of those deposits. As noted by the bankruptcy court in *Self,*

> [t]he statute places an affirmative duty on the debtor to create books and records accurately documenting his financial affairs . . . . creditors are not required to accept a debtor's oral recitations or recollections of his transactions; rather, to qualify for a discharge in bankruptcy, a debtor is required to keep and produce written documentation of all such transactions.

*Self,* 325 B.R. at 241 (citations omitted).

Based on the evidence presented at trial, the Court finds that the Defendant has failed to satisfy her burden of providing adequate information from which her financial condition could be ascertained. Defendant was unable to provide documentation to account for deposits reflected in her bank account statements of more than $11,000.00 made to her bank accounts during 2004. At trial Defendant testified that she earned a minimal amount of additional income from house cleaning and house sitting of about $100.00 to $150.00 total in 2004. Defendant also testified that she received gifts from her mother, which she recorded on a list. However, she admitted at trial that she later shredded the list. Defendant also testified at trial that she managed an after-school video club drawing funds from a grant given by APS for $6,500.00. Under the terms of the grant, she was required to purchase equipment, give the receipts to APS and seek reimbursement for those expenses. Defendant did not produce any records from these reimbursements and testified that she shredded those documents as well. Nor was any corroborating testimony or other evidence offered at trial to support Defendant's explanation that

6

the source of the undocumented deposits to her account was the grant from APS. Defendant's testimony as to these facts is, therefore, not credible to the Court.

Even when subtracting the $3,100.00 that Defendant reported in her Statement of Financial Affairs that she received from her mother, Defendant has failed to explain the source of and failed to provide documentation for over $8,000.00 in deposits made to her accounts. When compared to the monthly net income earned by Defendant of $2,104.64, this amount represents a material amount of unexplained and undocumented income. "A debtor has an obligation to reveal, rather than conceal, his complete financial condition." *Self,* 325 B.R. at 244. By failing to include all of the undocumented income in her statements and schedules, and by failing to provide documentation as to the source of the additional, unidentified, deposits, Defendant failed to meet her obligations under 11 U.S.C. § 727(a)(3) requisite to receive a discharge.

Based on the evidence and testimony at trial, the Court finds that the Defendant failed to keep or preserve records or papers from which her financial condition could be ascertained and that her failure to maintain records was not justified under the circumstances. Therefore, the Court will deny Defendant's discharge in this Chapter 7 bankruptcy under § 727(a)(3). Plaintiff also requested the Court to make a determination as part of the disposition of this adversary proceeding that she should be allowed to renew her judgment against Defendant. Because the Court has determined that Defendant shall not be granted a discharge, the Court need not make a determination as to whether Plaintiff is entitled to renew the judgment she previously obtained against Defendant in the prior state court action.

7

An appropriate judgment will be entered in this adversary proceeding in accordance with the terms of this Memorandum Opinion.

_____
MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

Copy to:

Clifford C. Gramer, Jr.
Attorney for Plaintiff
3733 Eubank Blvd. NE
Albuquerque, NM 87111

Daniel J. Behles
Attorney for Defendant
226-A Cynthia Loop NW
Albuquerque, NM 87114

8